UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at Covington

| | |
|---|---|
| DEBORAH HOBBS, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 2:25-cv-00062-SCM |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| FRANK BISIGNANO, Commissioner of ) | **AND ORDER** |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Deborah Hobbs appeals the Social Security Administration's denial of her claim for disability insurance benefits ("DIB") and Supplemental Social Security Income benefits ("SSI"). [Dkt. 1; Dkt. 8 at 19; Dkt. 9]. Hobbs requests that this matter be remanded to the Social Security Administration ("SSA") for payment of benefits or, in the alternative, remanded to the SSA for further proceedings. [Dkt. 9 at 15].

In support of that request, she contends that the Administrative Law Judge ("ALJ") assigned to her case made two errors. First, Hobbs argues that the ALJ failed to account for Hobbs's non-severe mental functional limitations when determining and applying her residual functional capacity at step four of the sequential evaluation process. [*Id.* at 2–3]. Second, she argues the ALJ incorrectly evaluated the opinion of consultative psychological examiner Emily Skaggs. [*Id.* at 13]. Hobbs contends either of these errors requires remand to the SSA. [*Id.* at 15]. The Court disagrees

and concludes that the ALJ's decision should be affirmed. Therefore, Hobbs's request for relief, [Dkt. 1], and motion for summary judgment, [Dkt. 9], are **DENIED**. The Court **AFFIRMS** the ALJ's decision. [Dkt. 8 at 19–21].

I.  **Background**

Hobbs alleges that she became disabled on April 1, 2020. [Dkt. 8 at 22]. She filed applications with the SSA seeking DIB and SSI under the Social Security Act (the "Act") in August 2021, which were denied in the first instance and again upon later reconsideration. [*Id.*]. Hobbs then filed a written request for a hearing before an ALJ. [*Id.*]. At that hearing, Hobbs was represented by an attorney and attended via telephone. [*Id.*].

The ALJ assigned to Hobbs's request denied her claim after finding that she was not disabled and thus not entitled to DIB or SSI. [*Id.* at 32]. The ALJ, following the five-step process, noted that Hobbs was unengaged in substantial gainful activity for the requisite period and has medically determinable impairments that significantly limit her ability to perform basic work activities. [*Id.* at 25]. But because Hobbs still has the residual functional capacity ("RFC") to perform her past relevant work, she is not disabled under the Act. [*Id.* at 31–32].

Following the ALJ's decision, Hobbs requested review by the Appeals Council. [*Id.* at 12]. The Appeals Council subsequently denied Hobbs's request. [*Id.* at 6]. Having exhausted her administrative remedies, Hobbs filed the instant Complaint requesting reversal and remand of the ALJ's decision. [Dkt. 1]. Hobbs has filed a

motion for summary judgment, [Dkt. 9], and the Commissioner has filed a response in opposition, [Dkt. 10]. This matter is now ripe for the Court's decision.

## II. Legal Standards

### A. ALJ Evaluation

To be entitled to benefits under the Act, a claimant must be adjudicated "disabled" under the definition from 20 C.F.R. § 404.1505. *See* 20 C.F.R. § 404.1501. The Act defines a "disability" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). Whether a claimant meets that definition is initially determined by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). It is not always necessary to go through all five steps, though. The point of the five-step process is to determine whether a claimant is or is not disabled. So if a claimant is conclusively determined to be either disabled or not disabled at any one of the five steps, then the process does not need to go any further. 20 C.F.R. § 404.1520(a)(4).

First, the ALJ considers whether the claimant is engaged in "substantial gainful activity," defined as work that "[i]nvolves doing significant and productive physical or mental duties" and "[i]s done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510; 404.1520(a)(4)(i), (b). If the claimant is engaged in substantial gainful

3

activity, he will be found to be not disabled. *Id.* § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the ALJ continues to step two.

Second, the ALJ determines whether the claimant has a severe impairment that meets the duration requirements. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If a claimant is found not to have a severe impairment, that claimant is not disabled. *Id.* If the claimant is found to have a severe impairment, the ALJ continues to step three.

Third, the ALJ analyzes whether the claimant's impairment(s) meet or equal one of the impairments listed in Appendix 1 to Subpart P of Part 404. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); 20 C.F.R. § 404.1520(a)(4)(iii). If so, then the claimant is disabled and the analysis ends. If not, the ALJ continues to step four.

Fourth, the claimant's "residual functional capacity" and "past relevant work" are determined and considered. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing his past relevant work in light of his residual functional capacity, he will be found not disabled. *Id.* If the claimant is not so capable, the ALJ continues to step five.

Fifth, the claimant's residual functional capacity is assessed in combination with his age, education, and work experience to determine if he "can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). If an adjustment can be

4

made, the claimant will be found not disabled. *Id.* If no adjustment can be made, the claimant will be found disabled. *Id.*

### B. Standard of Review

A district court reviewing an ALJ's decision to deny benefits may only consider "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405–06 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

An "ALJ's legal rulings, including his interpretation of relevant laws and regulations," are reviewed de novo. *Linden v. Comm'r of Soc. Sec.*, 131 F.4th 531, 534 (6th Cir. 2025) (citing *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018)). Factual assessments are reviewed under the substantial evidence standard. *Blakley*, 581 F.3d at 405–06. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," which is not a high threshold. *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). When there is "substantial evidence to support the ALJ's factual finding, that ruling is conclusive." *Linden*, 131 F.4th at 534. This is so even where substantial evidence exists supporting a different or even opposite conclusion. *Blakley*, 581 F.3d at 406 (citing *Key*, 109 F.3d at 273).

Because of this standard, the Court will not review this case de novo, nor will it resolve evidentiary conflicts or reconsider questions of credibility. *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The ALJ's decision will be affirmed if substantial evidence supports it, even if the Court might have reached a different

conclusion in the first instance. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

**III. <u>Analysis</u>**

Hobbs raises two issues with the ALJ's decision to deny her benefits. First, she states that "[t]he ALJ's residual functional capacity (RFC) finding omitted proven mental functional limitations without explanation." [Dkt. 9 at 1]. Second, she asserts that "[t]he ALJ erred in evaluating the opinion of consultative psychological examiner, Emily F. Skaggs, Psy.D." [*Id.*]. She is wrong on both counts.

**A. The ALJ was not required to recite each of Hobbs's non-severe mental impairments in formulating and applying her RFC at step four.**

Hobbs's first assignment of error is attributed to the ALJ's failure to explicitly mention her non-severe mental impairments when constructing the RFC at step four. [Dkt. 9 at 2–3]. Hobbs's issue is, at bottom, that "the ALJ here included precisely zero mental functional limitations of any kind in her RFC finding" despite having "previously explicitly found that Ms. Hobbs had mild limitations in all four functional areas." [*Id.* at 5] (emphasis omitted). But the Act imposes no such formalistic burden on the ALJ that required her to particularly recite each mild mental impairment in the RFC findings.

Precedent in the Sixth Circuit "makes clear" that "there is no requirement that the ALJ 'specifically discuss each non-severe impairment in the RFC assessment to demonstrate that the impairments were considered.'" *McFall v. Comm'r of Soc. Sec.*, No. 7:24-CV-17-REW, 2025 WL 354987, at *4 (E.D. Ky. Jan. 31, 2025) (quoting *Smith v. Comm'r of Soc. Sec.*, 715 F. Supp. 3d 994, 999 (E.D. Mich. 2024)) (collecting

6

cases). But this does not mean the ALJ can simply disregard mild mental impairments when configuring the RFC at step four. *Id.* The ALJ must consider them, but she is not required to explicitly incorporate them in the RFC. *Id.*

The ALJ's decision here shows that Hobbs's mild mental impairments were considered as part of the RFC, even if they were not affirmatively listed in the RFC portion of her decision. The ALJ made this clear at a couple different points. First, the ALJ noted that she "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." [Dkt. 8 at 25]. And at the end of the step two analysis, the ALJ also stated:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

[*Id.* at 27]. Other courts have considered almost identical language to be evidence of the ALJ's consideration of a claimant's mild mental functional limitations as part of the RFC. *See, e.g.*, *McFall*, 2025 WL 354987, at *4–*5.

Much like the claimant in *McFall*, Hobbs "derides as 'macros' and 'boilerplate' most of these markers of procedural propriety," [Dkt. 9 at 7, 11–12]. *McFall*, 2025 WL 354987, at *5. But, to the contrary, these statements "are blazes along the lawful analytical trail." *Id.* An ALJ may not even "mention [the claimant's] nonsevere impairments in assessing his residual functional capacity," but if she "state[s] that

7

she ha[s] carefully considered the entire record and 'all symptoms' at this step in the process," that can be enough. *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851 (6th Cir. 2020). A statement of consideration of the whole record and the claimant's symptoms, combined with a demonstrated understanding of applicable law, supports a conclusion of regulatory compliance. *Id.* at 851–52. The ALJ here did exactly what *Emard* approved of by correctly acknowledging the requirements of 20 C.F.R. § 416.945 and SSR 96-8, [Dkt. 8 at 24], stating her "consideration of the entire record," [*Id.* at 25], and demonstrating thorough consideration of the evidence of Hobbs's mental impairment at step two, [*Id.* at 25–27].

Of course, a mere statement that the ALJ considered the whole record would not be sufficient consideration of Hobbs's mental impairments for the RFC at step four. *See Johnson v. Colvin*, No. 7:15-cv-039-DCR, 2016 WL 3257124, at *3 (E.D. Ky. June 13, 2016) (boilerplate language that ALJ "considered all symptoms" insufficient to satisfy RFC obligations). But it makes sense to have a less thorough discussion of mental impairment at the RFC stage when—as here—it has already been thoroughly discussed at step two. *See McFall*, 2025 WL 354987, at *5.

The ALJ's step two analysis demonstrates an in-depth consideration of the mental impairment evidence in the record and supports a limited discussion of those limitations in the RFC. In finding Hobbs's mental impairments non-severe, the ALJ considered Hobbs's own testimony, objective medical evidence, and expert opinions regarding Hobbs's limitations. [Dkt. 8 at 25–27]. The ALJ spent much time outlining Hobbs's relevant statements and personal history. [*Id.*at 25–26]. The ALJ also

recognized the initial assessment of Hobbs by Hobbs's social worker. [*Id.* at 26]. Importantly, the ALJ contended with the opinions of three experts, finding two of them persuasive and one not persuasive. [*Id.* at 26–27]. All of this evidence combined to support a finding of "non-severe" mental impairments because they "cause no more than 'mild' limitation." [*Id.* at 27].

While the law is clear that steps two and four are separate, "that does not mean that the two inquiries have no relation." *McFall*, 2025 WL 354987, at *5. "Surely, a step two finding of severe impairment would typically require more in-depth treatment of the impairment in crafting the RFC. Conversely, as is the case here, a finding of mild impairment would logically lend itself to less discussion at the RFC stage." *Id.* That logic applies with full force in this case.

The ALJ here, like the ALJ in *McFall*, clearly stated that she considered Hobbs's mental impairments and applied them in the RFC: "The following [RFC] assessment reflects the degree of limitation [the undersigned has] found in the 'paragraph B' mental function analysis." *Compare id. with* [Dkt. 8 at 27]. At step two, the ALJ stated the standards correctly and utilized the full record, which included supportive state reviewer opinions. [Dkt. 8 at 25–27]. In putting together the RFC, the ALJ considered "the entire record," [*id.* at 28], considered all of Hobbs's symptoms, [*id.*], probed Hobbs's mental impairments in step two, [*id.* at 25–27], stated that the RFC reflected "the degree of limitation . . . found in the 'paragraph B' mental function analysis," [*id.* at 27], and explicitly recognized her duty to "consider all of the claimant's impairments, including impairments that are not severe," [*id.* at

9

24]. *See McFall*, 2025 WL 354987, at *6. And in the RFC formulation itself, the ALJ referenced some evidence of Hobbs's mental impairment symptoms. [Dkt. 8 at 29–30]. This recognition of the proper legal standards and detailed consideration of Hobbs's non-severe mental impairments at step two are sufficient under the principles of *Emard*.

The ALJ did not err by minimally referencing Hobbs's non-severe mental functional limitations in her RFC findings. Hobbs has not shown that substantial evidence does not support the ALJ's RFC findings.

**B. Substantial evidence supports the ALJ's evaluation of Hobbs's mental health impairments and the opinion of Emily Skaggs.**

Hobbs's second qualm is with the ALJ's treatment of Skaggs's opinion that Hobbs has a "'moderate' range of functional restrictions." [*Id.* at 26]. According to Hobbs, the ALJ erred where she "rejected [the] opinion in a single sentence," finding it not persuasive, while at the same time recognizing that Hobbs's "history of traumatic brain injury with craniotomy was a severe impairment." [Dkt. 9 at 13]. She also complains that the ALJ mischaracterized the temporal longevity of Hobbs's mental health symptoms and rejected Skaggs's opinion based on a "misinterpretation of the evidence." [*Id.* at 13–14]. These points of alleged error ask the Court to do what it cannot: second guess the factual findings of the ALJ where they are supported by substantial evidence.

Again, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103. And

10

when there is "substantial evidence to support the ALJ's factual finding, that ruling is conclusive." *Linden*, 131 F.4th at 534.

Substantial evidence exists for the ALJ's factual finding that Skaggs's assessment of Hobbs "is not persuasive" and supporting the conclusion that Hobbs's limitations are less than severe. In reaching her conclusion regarding Skaggs, the ALJ noted that Skaggs's opinion was not persuasive in light of the "longitudinal record." [Dkt. 8 at 26]. The ALJ's explicit consideration of the record alone shows that she did indeed engage with the whole record in coming to her conclusion. [*Id.*]. In fact, the ALJ considered the same timeline of facts identified by Hobbs as supporting Skaggs's conclusion, yet came to a different one. [*Id.*; Dkt. 9 at 13]. But this departure was reasonably justified, and the ALJ showed her work to boot.

In particular, the ALJ considered the conclusions of Mary K. Thompson, Ph.D., a psychologist and state agency consultant, who completed a Disability Determination Explanation form where she found that Hobbs had only mild limitations related to mental work-related functioning. [Dkt. 10 at 9; Dkt. 11 at 5; Dkt. 8 at 26, 89, 91–92]. Thompson even considered Skaggs's opinions and still found that the "[e]vidence supports a non-severe mental impairment." [Dkt. 8 at 92]. Further, the ALJ considered the conclusions of Christi C. Bruening, Ph.D., another state agency consultant, who completed a similar evaluation and determined there was insufficient evidence to support a medically determinable mental impairment. [*Id.* at 26, 69]. These facts constitute relevant evidence that a reasonable mind could

11

accept as adequate to support the conclusion that Skaggs's opinion on the severity of Hobbs's mental impairment is not persuasive.

In short, the ALJ determined that the findings of the state agency consultants supported a finding of less-than-moderate range of functional restrictions. And a reasonable mind could have done the same. So, while Hobbs may disagree with the ALJ's ultimate characterization of the evidence, that conclusion was reasonably drawn pursuant to the record.

Hobbs says that she "is not asking the Court to reweigh the evidence," but her briefing belies the point. [Dkt. 11 at 5]. Hobbs criticizes the ALJ's treatment of Skaggs's opinions because of the ALJ's "misinterpretation of the evidence" as reflecting less severe symptoms. [Dkt. 9 at 14]. This is a criticism of the ALJ's factual findings regarding Hobbs's mental health symptoms. Because the ALJ's decision to deem Skaggs's conclusions unpersuasive is supported by substantial evidence, the Court will not reverse based on that decision.

## IV. Conclusion

The ALJ's conclusions of fact are supported by substantial evidence and the ALJ did not commit any errors of law. The ALJ's decision should therefore be left undisturbed. Accordingly, the Court **DENIES** Hobbs's request for judgment, [Dkt. 1; Dkt. 9], and **AFFIRMS** the ALJ's decision under sentence four of 42 U.S.C. § 405(g). The Court will enter a separate judgment.

Signed this 10th day of March, 2026.



S. Chad Meredith, District Judge
United States District Court
Eastern District of Kentucky